

January 24, 2026


The Honorable Kelly Hancock
Acting Comptroller of Public Accounts
Post Office Box 13528
Austin, Texas 78711-3528

      **Opinion No. KP-0509**

      Re: Eligibility of certain private schools to participate in the Texas Education Freedom Accounts program (RQ-0625-KP)

Dear Acting Comptroller Hancock:

      You requested an opinion concerning eligibility to participate in the Texas Education Freedom Accounts ("TEFA") program and, to that end, invoke a limited set of facts regarding certain private schools.[1] But the Eighty-ninth Legislature unambiguously vested the Comptroller's Office— whose authority you exercise as Chief Clerk, TEX. GOV'T CODE § 403.003(a)(2)—with the exclusive duty of "establish[ing]" and "administer[ing]" the TEFA program. TEX. EDUC. CODE § 29.352. Part of that charge includes your obligation to find facts bearing on participants' eligibility. *See, e.g.*, *id.* §§ 29.358 (obligating the Comptroller to "by rule establish a process for . . . preapproval"), .372 (obligating the Comptroller to "adopt rules and procedures as necessary to implement, administer, and enforce" the relevant subchapter). Nonetheless, your inquiry improperly shifts the responsibility of making these factual determinations to the Attorney General. Our office has no greater statutory role in deciding who qualifies for the TEFA program than we do in dictating which private schools are accredited in Texas. Neither can our office decide unexplored fact questions, which lie beyond the reach of an attorney general opinion—as we have repeatedly and consistently emphasized. *See, e.g.*, Tex. Att'y Gen. Op. No. KP-0452 (2023) at 3; Tex. Att'y Gen. Op. No. MW-0390 (1981) at 4. At bottom, the open factual questions that lie at the heart of your request are to be resolved by the Comptroller's Office alone.

      However, while we cannot shoulder your statutory responsibilities, we can offer general legal guidance in support of your duty to ensure the TEFA program is not used as a means of unlawfully subsidizing designated enemies of the state. The Education Code makes clear that "[a]n education service provider or vendor of educational products that receives approval under [section 29.358] may participate in the program until . . . [it] no longer meets the requirements under [that]

---

[1] *See* Letter from Kelly Hancock, Comptroller of Public Accounts, to Hon. Ken Paxton, Tex. Att'y Gen. at 1–2 (Dec. 12, 2025), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2025/RQ0625KP .pdf ("Request Letter").

section[] or . . . violates [subchapter J] . . . or *other relevant law*." TEX. EDUC. CODE § 29.358(h)(2) (emphasis added). But the term "other relevant law" is undefined. *See* TEX. EDUC. CODE § 29.351. This requires that we determine the proper scope of "other relevant law" incorporated by the Education Code. *See* Request Letter at 1–2.

Dictionary definitions prove helpful in understanding the phrase's ordinary meaning. *Am. Pearl Grp., L.L.C. v. Nat'l Payment Sys., L.L.C.*, 715 S.W.3d 383, 387 (Tex. 2025). Indeed, a variety of contemporary sources reveal that the term "relevant" sounds in its associated context. *See, e.g.,* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2022) (referencing "a bearing on or connection with the matter at hand"); *see also, e.g.*, MERIAM-WEBSTER COLLEGIATE DICTIONARY (12th ed. 2025) (same); WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1226 (5th ed. 2014) (same). Here, of course, the phrase "other relevant law" appears three times within the Education Code: twice within section 29.358, and once within section 29.363. *See generally* TEX. EDUC. CODE §§ 29.358(g)(4) ("An education service provider or vendor of educational products must agree to . . . return any money received, including any interest or other additions received related to the money, in violation of this subchapter or *other relevant law* to the comptroller for deposit into the program fund." (emphasis added)), (h)(2) ("An education service provider or vendor of educational products that receives approval under this section may participate in the program until the earliest of the date on which the provider or vendor . . . violates this subchapter or *other relevant law*." (emphasis added)), .363(c) ("The private entity shall report to the comptroller any violation of this subchapter *or other relevant law* and any transactions the entity determines to be unusual or suspicious found by the entity during an audit conducted under this section." (emphasis added)). Each of these references are united in that they build upon provisions governing the receipt, administration, and expenditure of program funds. *Compare id.* § 29.358(g)(4), *and id.* § 29.358(h)(2), *with id.* § 29.363(c). This uniform context reveals that the phrase "other relevant law" implicates extant restrictions on the *lawful operation* of entities that aspire to participate in the TEFA program—echoing the blackletter presumption that this framework was "enacted by the [L]egislature with complete knowledge of the existing law and with reference to it." *Acker v. Tex. Water Comm'n,* 790 S.W.2d 299, 301 (Tex. 1990); *accord Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972).

That sweeping backdrop bears several restrictions that could prove relevant to your administration of the TEFA program. For example, no educational entity can lawfully provide foreign terrorist organizations with material support. *See, e.g.*, TEX. PENAL CODE § 76.02–03; *cf.* 18 U.S.C. §§ 2339A–B. Nor can designated transnational criminal organizations—including those associated with the "People's Republic of China," 86 Fed. Reg. 4909, 4914 (2021)—lawfully "purchase or otherwise acquire an interest in real property in this state." TEX. PROP. CODE § 5.253; *see also id.* § 5.251(3), (7). It follows that schools or vendors who violate these "other relevant law[s]" are rendered ineligible for the TEFA program.[2] *See generally* TEX. EDUC. CODE § 29.358(h)(2).

---

[2] Our longstanding policy counsels against any more detailed discussion due to ongoing litigation, Tex. Att'y Gen. Op. No. GA-0502 (2007) at 3–4, in which the Attorney General is defending these laws from challenge by some of the same entities referenced in your request. *See generally Council on American-Islamic Relations Texas Dallas Fort Worth v. Abbott*, No. 1:25-CV-01878 (W.D. Tex. Nov. 20, 2025); *Beijing Daxing Huaxin Xingbang Science and Technology Development Research Center v. Paxton*, 1:25-CV-01981 (W.D. Tex. Dec. 4, 2025).

Unsurprisingly, the Legislature vested the Comptroller's Office with sweeping authority in support of your obligation to find facts that implicate these restrictions. *See generally* TEX. CONST. art. IV, §§ 1, 23. Among that legislative endowment is "the authority to[] . . . engage the services of private consultants, actuaries, trustees, records administrators, managers, and legal counsel for administrative and technical assistance," *id.* § 29.352(a)(2); to request "information" from providers or vendors in order "to verify . . . eligibility for preapproval," *id.* § 29.358(d); as well as the obligation to "contract with a private entity" that "audit[s] accounts and program participant eligibility data not less than once per year to ensure compliance by[]" both "education service providers and vendors" alike, *id.* § 29.363(a); *see also id.* § 29.363(g) (requiring that "[e]ach education service provider" supply "the state auditor [with] proof of a third-party audit or financial review consistent with the provider's accreditation commission standards"). Likewise, the Legislature has directed that you "immediately suspend" otherwise approved providers and vendors upon "finding that [either] . . . has failed to remain in good standing by complying with . . . applicable law." *Id.* § 29.364(a); *see also, e.g.*, *id.* §§ 29.358(g)(4) (requiring that educational service providers and vendors "agree to . . . return any money received, including any interest or other additions received related to the money, in violation of this subchapter or other relevant law"), .364(d) (providing for recovery of "money distributed under the program" in certain scenarios).

This is all to say that we agree Texans "deserve the highest assurance that no taxpayer dollars will be used[] . . . to support institutions with ties to a foreign terrorist organization, a transnational criminal network, or any adversarial foreign government." Request Letter at 2. The TEFA program is anything but a statutory subterfuge for granting fungible subsidies to unlawful enterprises. *See supra* p. 2. Still, this does little more than return us to the obvious: Your role as Acting Comptroller carries with it the duty to diligently find facts upon which the TEFA program can be lawfully administered—scrutinizing each provider and vendor hoping to participate—while timely approving the many other providers and vendors awaiting your determinations.

## S U M M A R Y

Texas Education Code section 29.358(h)(2)'s "other relevant law" provision incorporates by reference other laws that govern the lawful operation of educational service providers and vendors that aspire to participate in the Texas Education Freedom Accounts program. This includes the prohibition on property ownership by transnational criminal organizations as well as the categorical bar on providing material support to foreign terrorist organizations, both of which govern educational service providers and vendors alike. But the Legislature has charged the Comptroller with the exclusive duty of finding facts on which such "relevant law" can be applied.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

JOSHUA C. FIVESON
Chair, Opinion Committee